IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE MARTINEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SKIRMISH, U.S.A., INC., ET AL. | : | NO. 07-5003 |

**MEMORANDUM**

**Padova, J.**                                                                                                                **May 21, 2009**

      This action was initiated by Jorge Martinez, who has brought claims for negligence, strict liability, breach of the implied warranties of merchantability and fitness for a particular purpose, and gross negligence against Defendant Skirmish, U.S.A., Inc. ("Skirmish"), arising from the injury he suffered when he was hit in the eye with a paintball at Skirmish's Jim Thorpe, Pennsylvania facility on March 19, 2006. Skirmish has filed third-party complaints for contribution and indemnity against Tippmann Sports, LLC ("Tippmann"), a manufacturer of paintball guns, and Procaps Direct, Inc. and Procaps L.P., which companies manufacture and/or distribute paintballs and goggles.[1] Before the Court are a Motion for Summary Judgment filed by Tippmann and a Motion for Partial Summary Judgment filed by Skirmish. For the reasons that follow, both Motions are granted.

**I.     FACTUAL BACKGROUND**

      On March 19, 2006, Martinez played paintball at Skirmish's facility in Jim Thorpe, Pennsylvania, as part of a group that had traveled to Jim Thorpe from New York. (1st Am. Compl. ¶ 12; Skirmish Ans. ¶ 12; Martinez Dep. at 21-22.). Paintball is an activity in which two or more teams, or separate individuals, engage in mock war games. (1st Am. Compl. ¶ 6; Skirmish Ans. ¶

---

[1]Plaintiff has also filed a complaint against Procaps Direct, Inc. and Procaps L.P. asserting claims for strict liability and breach of the implied warranties of merchantability and fitness for a particular purpose.

6.) Participants shoot their opponents with paintballs, which are gelatin encased balls of dye, that are propelled from paintball guns by the use of carbon dioxide gas or compressed air. (1st Am. Compl. ¶ 6; Skirmish Ans. ¶ 6.)

Martinez was permanently blinded in his right eye during the fifth game he played on March 19, 2006. (Martinez Dep. at 145-46, 175.) The group of people he had traveled with from New York had been divided into two teams who were playing a capture-the-flag game against each other. (Id. at 175, 180-81.) Martinez had been running across the playing field, trying to capture the other team's flag, when his goggles slipped down his face until the top of the goggles rested on the tip of his nose. (Id. at 119, 180, 183, 187.) He was shot in the right eye with a paintball immediately after his goggles slipped, thereby leaving his eyes unprotected. (Id. at 183-84, 187.) Martinez did not see the person who shot him in the right eye and does not know who it was. (Id. at 185; Martinez Aff. ¶ 2.) He also does not know what kind of paintball gun was used to shoot him. (Martinez Dep. at185.) No one else has identified the person who shot Martinez or the type of paintball gun that was used to shoot him. (Lukasevich Dep. at 70-71, Crespo Dep. at 39-42, 52; Reyes Dep. at 89; Fink Dep. at 45.)

Skirmish sells and rents paintball equipment, including paintball guns, goggles and paintballs, for participants who do not have their own equipment. (Martinez Dep. at 35, 43, 45-46; Lukasevich Dep. at 13, 17; Crespo Dep. at 46.) At the time Plaintiff was injured, Skirmish only rented Tippmann guns. (Paul Fogel Dep. at 88.)

Elvis Crespo organized the March 19, 2006 paintball trip from New York, bringing 45 people to Skirmish's Jim Thorpe facility. (Martinez Dep. at 22-23, 32-33; Crespo Dep. at 45.) Crespo brought his own paintball gun, a Tippmann A5, to Skirmish's facility that day. (Crespo Dep. at 45.)

Ten or 15 people from Crespo's 45-person group brought their own paintball guns. (Id. at 45-46.) Most of those guns were manufactured by Tippmann. (Id. at 46.) Two or three of the paintball participants from Crespo's New York group brought paintball guns that were not manufactured by Tippmann. (Id. at 46.)

Martinez has asserted strict liability and breach of implied warranty claims against Skirmish with respect to the paintball gun used to shoot him. The relevant paragraphs of the First Amended Complaint allege as follows:

> 40. The paintball gun or guns rented out by Skirmish or sold by Skirmish to others and used to shoot Plaintiff in the eye were in a defective condition and unreasonably dangerous to Plaintiff.
>
> 41. The parties who rented or purchased such paintball guns did not make any substantial changes to the condition of the paintball guns before shooting plaintiff.

(1st Am. Compl. ¶¶ 40-41.) Tippmann seeks the entry of summary judgment in its favor on the ground that no product that it designed, manufactured, sold or distributed has been identified as being the cause of Plaintiff's injury. Skirmish has moved for the entry of partial summary judgment in its favor, striking Martinez's claims with respect to the paintball gun, in the event that we grant Tippmann's Motion.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material"

if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must -- by affidavits or otherwise as provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (citations omitted). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993).

**III. DISCUSSION**

    A.    Tippmann's Motion for Summary Judgment

Skirmish's claim for contribution and indemnity against Tippmann depends on whether

Tippmann could be held liable for the injuries to Martinez.[2] Consequently, we consider whether Plaintiff could successfully assert a strict liability claim or a breach of implied warranty claim against Tippmann.

The United States Court of Appeals for the Third Circuit has recently predicted that Pennsylvania will adopt Sections 1 and 2 of the Restatement (Third) of Torts. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 40 (3d Cir. 2009) (footnote omitted). Section 1 of the Restatement (Third) of Torts states that: "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." Restatement (Third) of Torts: Products Liability, § 1. Section 2 states as follows:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
>
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the

---

[2]"Under Pennsylvania law, the right to contribution arises only among joint tortfeasors." Scott v. Walter Kidde Portable Equip., Inc., Civ. A. No. 02-1460, 2002 WL 1880521, at *2 (E.D. Pa. Aug. 12, 2002) (citations omitted). "Indemnity, on the other hand, is limited to situations in which the liability of one party is said to be secondary or passive to that of another . . . ." Anderson v. Dreibelbis, 104 F.R.D. 415, 416 (E.D. Pa. 1984).

> commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Id. § 2.

In order to be successful in a products liability action, the plaintiff must identify the defective product that caused his injury. See Burger v. Owens Illinois, Inc., 966 A.2d 611, 624 (Pa. Super. Ct. 2009) (affirming entry of summary judgment in favor of manufacturer of brake shoes where plaintiff was unable to identify the manufacturer of the brake shoes that injured him (citing Bugosh v. Allen Refractories Co., 932 A.2d 901 (Pa. Super. Ct. 2007), appeal granted, Bugosh v. I.U. N. Am., Inc., 942 A.2d 897 (Pa. 2008))). The Pennsylvania Superior Court has explained that:

> In the context of a products liability action, before liability will attach, "plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier." Payton v. Pennsylvania Sling Co., 710 A.2d 1221, 1225-1226 (Pa. Super. 1998), citing Burman v. Golay and Co., Inc., 420 Pa. Super. 209, 616 A.2d 657, 659 (1992). "[I]n cases in which the allegedly defective product is not available, a plaintiff may prove identification through circumstantial evidence." Id. at 1224, citing O'Donnell v. Big Yank, Inc., 696 A.2d 846, 849 (Pa. Super. 1997). The quantum of identification evidence a plaintiff must offer prior to trial in order to justify allowing the issue to be submitted to a jury is factual and, thus, case-specific. Id., citing O'Donnell, 696 A.2d at 849.

Stephens v. Paris Cleaners, Inc., 885 A.2d 59, 63 (Pa. Super. Ct. 2005) (granting summary judgment in favor of supplier and alleged manufacturer of defective work clothes where plaintiff could not identify which of three possible manufacturers made the work clothes, all of which were supplied by Paris Cleaners, that he was wearing when he was injured). The rules are similar with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose. See Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004), aff'd 885 A.2d 982 (Pa. 2005) (noting that anyone injured by a defective product may sue anyone in the distributive

chain for breach of the implied warranty of merchantability and that the Supreme Court of Pennsylvania has "harmonized the rules governing implied warranty claims with the rules governing products liability claims, because the two types of actions are now substantially similar" (citing Williams v. West Penn Power Co., 467 A.2d 811 (Pa. 1983) and Salvador v. Atlantic Steel Boiler Co., 319 A.2d 903, 907-08 (Pa. 1974))). Consequently, Martinez could sue the manufacturer of the paintball gun that was used to shoot him for breach of the implied warranties of merchantability and fitness for a particular purpose, if he were able to identify the manufacturer. See D & D Transp. v. Freightliner, L.L.C., Civ. A. No. 07-00960, 2008 WL 919599, at *1 n.2 (M.D. Pa. Apr. 2, 2008) ("Evidence linking the defendant to the product which allegedly has failed is a necessary element of a plaintiff's case for breach of warranty." (citing Santarelli v. BP America, 913 F. Supp. 324, 329 (M.D. Pa. 1996) and Stephen M. Feldman, Pennsylvania Trial Guide: Product Liability § 5.1 (2000)).

Tippmann argues that it is entitled to the entry of summary judgment in its favor on Skirmish's claim for contribution and indemnity, because the paintball gun that was used to shoot Martinez has not be identified, and, accordingly, Tippmann has not been identified as the manufacturer, seller or distributor of the paintball gun that caused Martinez's injury. Neither Martinez nor Skirmish opposes Tippmann's Motion and both agree that Tippmann should be dismissed as a Third-party Defendant in this action because there is no evidence that Tippmann was the manufacturer, designer, seller or distributor of the paintball gun used to shoot Martinez. (5/15/09 Hrg. Tr. at 4.) We also agree.

Viewing the evidence in the light most favorable to Skirmish, the evidence establishes that the majority of the paintball guns in use on the field where Martinez was injured were manufactured by Tippmann. However, there is no evidence identifying the particular paintball gun used to shoot

Martinez as having been manufactured by Tippmann. Evidence that a substantial percentage of the paintball guns that could have been used to injure Martinez were manufactured by Tippmann is not sufficient to create a jury issue regarding the identity or manufacturer of the specific paintball gun used to shoot Martinez. Cf. Stephen M. Feldman, Pennsylvania Trial Guide: Product Liability § 5.2 (2008) ("[E]vidence that a substantial percentage of the inventory of a retailer is made up of the products of a particular manufacturer is not sufficient evidence that a specific product acquired from the retailer was the product of that manufacturer even though there was a high probability of the fact."). Tippmann's Motion for Summary Judgment is, accordingly, granted.

   B.  Skirmish's Motion for Partial Summary Judgment

Skirmish has moved for partial summary judgment in its favor on Martinez's claims relating to the paintball gun. Skirmish asks that Martinez's allegations relating to the paintball gun (paragraphs 40 and 41 of the First Amended Complaint) be stricken and that his strict liability and implied warranty claims related to the paintball gun be dismissed. Skirmish maintains that Martinez cannot prevail against it on his strict liability and implied warranty claims related to the paintball gun if he cannot identify the type of paintball gun that was used to shoot him, or identify Skirmish as the seller or distributor of that gun. As we discussed above, identification of the product, as well as identification of the manufacturer or distributor of the product, are crucial parts of claims of strict liability and breach of implied warranty. See D & D Transp., 2008 WL 919599, at *1 n.2. See also Santarelli, 913 F. Supp. at 329 ("Evidence linking the defendant to the product which allegedly injured the plaintiff is a necessary element of plaintiff's case . . . . If the plaintiff cannot link each defendant to the product which allegedly caused her injury, she cannot prevail against that defendant." (citing City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 123-29 (3d Cir.1993))).

Viewed in the light most favorable to Martinez, as the non-moving party, the evidence demonstrates that the majority of the paintball guns on the field where Martinez was injured were rented by Skirmish. However, there is no evidence that Skirmish supplied the particular paintball gun used to shoot Martinez. A probability that Skirmish supplied the paintball gun used to injure Martinez is not sufficient to create a jury issue with respect to Skirmish's strict liability, or liability for breach of implied warranty, in connection with the paintball gun. See Meadows v. Anchor Longwall & Rebuild, Inc., 455 F. Supp. 2d 391, 398 (W.D. Pa. 2006) (granting summary judgment in favor of alleged supplier of malfunctioning mine shield valve in products liability action, where another supplier also supplied valves to the mine and there was no way to distinguish between the valves purchased from the two suppliers); see also Payton v. Pa. Sling Co., 710 A.2d 1221, 1225-26 (Pa. Super. Ct. 1998) (granting summary judgment in favor of supplier of defective chain sling where there was no evidence distinguishing which of two possible suppliers supplied the chain sling that caused plaintiff's injury). We conclude that Martinez's inability to both establish the identity of the paintball gun used to injury him and to link Skirmish to that paintball gun is fatal to his strict liability and breach of implied warranty claims against Skirmish related to the paintball gun.

Martinez attempts to avoid the problems caused by his inability to identify the paintball gun that was used to shoot him, and his inability to link Skirmish to that gun as the seller or distributor, by asserting that all of the paintball guns used at Skirmish's facility on the day he was shot had the same defect. Plaintiff's expert, Alan Bissell, Ph.D., P.E., has opined that all of the paintball guns that Skirmish rented, and all of the paintball guns it allowed to be used at its facility, were defective because they could be adjusted to fire paintballs at speeds exceeding 300 feet per second:

> The paintball guns have the ability to be adjusted to fire the paintballs

9

>at initial velocities greater than the rated ability of the ballistic lenses used to withstand impact from a paintball without damage or penetration. The lenses are rated to withstand a paintball hit up to *300 ft/sec* velocity (or over 200 mph). The guns can have their propellant gas pressure adjusted to velocities higher than that depending on the model and make of the paintball gun. Mr. Martinez and Mr. Reyes both reported that the initial velocities of the guns issued to them were never checked and only some of the personally owned guns were checked. The adjustment to raise initial velocity can be done in the field quickly to accommodate, for example, a greater range shot. Velocity of a fired paintball decreases with distance, but if the goggle lenses used by Skirmish U.S.A. are hit by a paintball whose velocity has not yet fallen below *300 ft/sec*, eye injury can be expected to occur.

(Trident Rpt. at 3-4, ¶ 8.) Bissell also states in his report that "[a]ll paintball guns need to be designed so that velocities higher than *300 ft/sec* will not be generated by the propellant gas pressure." (Id. at 5.) Martinez contends that a jury could find, based on this evidence, that all of the paintball guns rented by Skirmish, and that Skirmish allowed to be used at its facility, were defective.

Bissell's opinion is, however, unavailing. Skirmish cannot be held to be liable to Martinez for strict liability or breach of the implied warranties of merchantability or fitness for a particular purpose, unless it can be placed somewhere in the chain of distribution of the paintball gun that was used to shoot him. See D & D Transp., 2008 WL 919599, at *1 n.2; Santarelli, 913 F.Supp. at 329. Martinez simply cannot establish that link. We conclude, accordingly, that Skirmish is entitled to summary judgment with respect to Martinez's strict liability and implied warranty claims related to the paintball gun used to cause his injury. Martinez's strict liability and breach of implied warranty claims related to the paintball gun are, therefore, dismissed and paragraphs 40 and 41 of the First Amended Complaint are stricken.

Martinez argues alternatively that it would be unfair to grant summary judgment to Skirmish on the ground that the paintball gun cannot be identified, because Skirmish had a duty to secure the paintball gun at the time of his injury and failed to do so. Martinez contends that Skirmish's failure to secure this evidence should be construed against it under the doctrine of spoliation and that, under this doctrine, he is entitled to a presumption that the lost evidence would prove his claims. "'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). "A showing of spoliation may give rise to a variety of sanctions: '[1] dismissal of a claim or granting judgment in favor of a prejudiced party; [2] suppression of evidence; [3] an adverse inference, referred to as the spoliation inference; [4] fines; [and] [5] attorneys' fees and costs.'" Id. at 110-11 (footnote omitted) (quoting Mosaid Techs., 348 F. Supp. 2d at 335). The "spoliation inference" is an inference "that the destroyed evidence would have been unfavorable to the position of the offending party." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994) (citation omitted). We consider three elements in determining whether a spoliation sanction is appropriate:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

Id. at 79 (citations omitted).

Determining the fault of the party who altered or destroyed the evidence "requires

consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith." Creazzo v. Medtronic, Inc., 903 A.2d 24, 29 (Pa. Super. Ct. 2006) (citing Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., 781 A.2d 1263, 1270 (Pa. Super. Ct. 2001)).  A party has a duty to preserve evidence where "'(1) the [party] knows that litigation . . . is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the [other party].'"  Id. (quoting Mount Olivet, 781 A.2d at 1270-71).

Martinez argues that Skirmish's motion should be denied and that he is entitled to a spoliation inference because Skirmish had a duty to obtain and preserve the paintball gun that was used to shoot him, and it failed to do so.  Martinez also contends that he has been severely prejudiced by the absence of the paintball gun that shot him and that there is no lesser sanction that would avoid substantial unfairness to Skirmish.

Plaintiff has submitted evidence that no one from Skirmish attempted to find out who shot him or discover the identity or manufacturer of the paintball gun that was used.  Peter Lukasevich, Skirmish's umpire for Martinez's fifth paintball game on March 19, 2006, testified at his deposition that he did not see Martinez get shot and that he does not know if any Skirmish employee tried to find out who had shot him.  (Lukasevich Dep. at 92.)  Skirmish's General Manager, Karen Fink, testified at her deposition that she did not take any steps to ascertain the identity of the person who shot Martinez.  (Fink Dep. at 25.)  Martinez has not, however, submitted any evidence that any employee of Skirmish acted in bad faith.

Plaintiff relies on Tenaglia v. Proctor & Gamble, Inc., 737 A.2d 306 (Pa. Super. Ct. 1999) and Creazzo v. Medtronic, Inc., 903 A. 24 (Pa. Super. Ct. 2006), to support his claim that Skirmish

had a duty to obtain and preserve the paintball gun after he was shot. In both of these cases, the Superior Court affirmed the trial courts' orders dismissing the plaintiffs' product liability claims as a spoliation sanction. Tenaglia's claims against Proctor & Gamble were dismissed because she failed to preserve a box that she contended caused her injuries because it was defectively manufactured. See Tenaglia, 737 A.2d at 307. The Superior Court affirmed because Tenaglia "had the opportunity, and ability, to preserve the evidence by taking control or possession of the box before it was destroyed[;]" the prejudice to Proctor & Gamble was severe because Tenaglia was pursuing a manufacturing defect theory; and no lesser sanction would protect Proctor & Gamble's rights because it was "unable to determine whether the box was, in fact, defective, or the cause of any defect, without an opportunity to inspect the box." Id. at 308-09. Creazzo's strict liability claim against Medtronic regarding a device that had been surgically implanted in his back was dismissed because he failed to preserve crucial evidence. Creazzo, 903 A.2d at 27. The Superior Court concluded that dismissal of Creazzo's claims was the only adequate sanction where Creazzo had the device surgically removed after he filed suit against Medtronic, and consequently knew of the pending claim, yet failed to take steps to preserve the device following surgery, even though Medtronic's attorney had specifically requested that the device be preserved. Id. at 27, 29-30.

    The circumstances in this case are not similar to the circumstances in Tenaglia and Creazzo. In those cases, the party charged with the duty to preserve the evidence had actual physical control over the evidence but allowed it to be destroyed. In addition, in both cases, the party that was found to have the duty to preserve the evidence was the party that filed the lawsuit, and consequently had notice of the pending claim. There is no evidence in this case that Skirmish knew or should have known at the time Martinez was shot that he would bring strict liability and breach of implied

warranty claims against Skirmish based on the paintball gun. There is also no evidence that any employee or officer of Skirmish ever had physical control over the paintball gun that was used to shoot Martinez. Under these circumstances, we cannot find that Skirmish was under any greater duty to obtain and preserve the paintball gun than Martinez. We conclude, accordingly, that spoliation sanctions in the form of denying Skirmish's Motion for Partial Summary Judgment and a spoliation inference in favor of Martinez are not warranted.

## IV.   CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Tippmann and against Skirmish on Skirmish's Third Party Complaint against Tippmann and that Third-Party Complaint is dismissed. Tippmann is, accordingly, dismissed as a party to this action. Summary judgment is also granted in favor of Skirmish and against Martinez as to Martinez's claims of direct liability and breach of the implied warranties of merchantability and fitness for a particular purpose related to the paintball gun used to shoot him. Paragraphs 40 and 41 of the First Amended Complaint are, therefore, stricken.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.