IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE MARTINEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SKIRMISH, U.S.A., INC., ET AL. | : | NO. 07-5003 |

### MEMORANDUM

**Padova, J.**                                                                     **June 1, 2009**

      Jorge Martinez has sued Procaps Direct, Inc. and Procaps L.P. (collectively "the Procaps Defendants"), which are companies that manufacture and/or distribute paintballs and goggles, asserting claims for strict liability and breach of the implied warranties of merchantability and fitness for a particular purpose arising out of an injury he suffered on March 19, 2006, when he was hit in the eye with a paintball at the Jim Thorpe, Pennsylvania paintball facility owned by Skirmish, U.S.A., Inc. ("Skirmish"). Martinez has also brought claims against Skirmish for negligence, strict liability, breach of the implied warranties of merchantability and fitness for a particular purpose, and gross negligence. In addition, Skirmish has filed third-party complaints for contribution and indemnity against Procaps Direct, Inc. and Procaps L.P.[1] Before the Court is the Motion for Summary Judgment filed by the Procaps Defendants, seeking the dismissal of all claims against them. For the reasons that follow, the Motion is granted.

**I.    FACTUAL BACKGROUND**

      On March 19, 2006, Martinez played paintball at Skirmish's facility in Jim Thorpe,

---

[1]Skirmish originally filed a third-party complaint for contribution and indemnity against Procaps, Direct USA. (Docket No. 13.) Procaps Direct, Inc. filed an answer to that complaint, asserting that it had been incorrectly identified as Procaps, Direct USA. (Docket No. 23.) Skirmish subsequently filed third-party complaints against Procaps Direct, Inc. and Procaps L.P. (Docket Nos. 35, 37.) Skirmish must advise the court whether it intends to pursue its claims for contribution and indemnity against Procaps, Direct USA.

Pennsylvania, as part of a group that had traveled to Jim Thorpe from New York. (1st Am. Compl. ¶ 12; Skirmish Ans. ¶ 12; Martinez Dep. at 21-22.). Paintball is an activity in which two or more teams, or separate individuals, engage in mock war games. (1st Am. Compl. ¶ 6; Skirmish Ans. ¶ 6.) Participants shoot their opponents with paintballs, which are gelatin encased balls of dye that are propelled from paintball guns by the use of carbon dioxide gas or compressed air. (1st Am. Compl. ¶ 6; Skirmish Ans. ¶ 6.)

Skirmish sells and rents paintball equipment to participants who do not have their own, including paintball guns, goggles and paintballs,. (Martinez Dep. at 35, 43, 45-46; Lukasevich Dep. at 13, 17; Crespo Dep. at 46.) Martinez did not own his own paintball equipment. (Martinez Dep. at 23.) Consequently, when Martinez arrived at Skirmish's Jim Thorpe paintball facility, he rented a paintball gun and paintball goggles and purchased paintballs from Skirmish. (Id. at 35, 43-46; Pl. Product Liability Identification ¶ 1.)

The pair of goggles that Martinez rented from Skirmish on March 19, 2006 were returned to Skirmish's general inventory after his injury and have not been located. (Fink Dep. at 19.) Martinez has, however, identified the goggles he rented from Skirmish on March 19, 2006 as VForce Armor Rental Field Black Goggles. (Pl. Product Liability Identification ¶ 1.) The word "VForce" was printed on the top of the goggles. (Martinez Dep. at 45.) Those were the only kind of goggles that Skirmish rented at the time of Martinez's injury. (Paul Fogel Dep. at 49-50.)

Martinez reports that the goggles he rented from Skirmish appeared to be old and were not in very good condition. (Martinez Dep. at 198-99.) When Martinez put the goggles on before his first game, they did not fit tightly. (Id. at 69.) They continued to be loose for all five games that Martinez played on March 19, 2006. (Id. at 113.) He played with them, even though they were

loose, and he believes that they should have fit more tightly. (Id. at 113-15.)

During the fifth game Martinez played on March 19, 2006, the group of people he had traveled with from New York were divided into two teams who played a capture-the-flag game against each other. (Id. at 175, 180-81.) Martinez ran across the playing field, trying to capture the other team's flag, when his goggles slipped down his face until the top of the goggles rested on the tip of his nose. (Id. at 119, 180, 183, 187.) He was shot in the right eye with a paintball immediately after his goggles slipped, thereby leaving his eyes unprotected. (Id. at 183-84, 187.) Martinez was permanently blinded in his right eye. (Martinez Dep. at 145-47.)

Martinez's expert, Dr. Allen M. Bissell of Trident Engineering Associates, Inc. ("Trident"), has opined that the VForce Armor Rental Field Black Goggles rented to Martinez by Skirmish were defectively designed in that they did not contain a vertical restraint that would prevent them from moving vertically on the wearer's face. (Trident Rpt. at 7 ¶ f.) The design thus allowed the goggles to slip during circumstances common to paintball, such as sweating, brushing against trees and shrubs, running, and stumbling. (Id.) Dr. Bissell further opined that the "rear strap on the VForce armor [goggles] rented to Mr. Martinez was defectively designed, in that it will loosen during circumstances that are commonly predictable . . . such as sweating, brushing against tree branches, running and stumbling . . . leading to mask slippage, which exposes the wearer's eyes to being struck by paintballs shot at ballistic speeds." (Id. at 8 ¶ g.) Dr. Bissell has also opined that the goggles were defectively maintained in that the rear strap was old and worn at the time it was used by Martinez, leading to slippage. (Id. at 7 ¶ e.)

Procaps Direct, Inc. began operations in 2005 and began selling VForce goggles and paintballs directly to Skirmish in November 2006. (Procaps Direct, Inc. Resp. to Skirmish's Req.

3

for Produc. ¶ 10; Procaps Direct, Inc. Ans. to Skirmish's Third-Party Compl. ¶¶ 8, 10.) The Procaps Defendants have provided invoices showing that Procaps Direct, Inc. sold paintballs, VForce brand goggles, and parts for VForce Armor Rental Field Goggles, to Skirmish from November 7, 2006 through November 2007. (Procaps Defs. Ex. D.)

Procaps L.P. was formed in March 2005 and has been the owner of the "VForce" trademark since that time. (Procaps Defs. Reply Br. at 6, ¶ 15; Pl. Exs. F, G.) The original owner of the "VForce" trademark was Leader Industries, Inc.. (Pl. Ex. G.) The trademark was later owned by Airtech Innovations, Inc., a division of Procaps Encapsulation, Inc., which purchased the "VForce" trademark and molds from Leader Industries around 2001-02. (Id.; 5/14/09 Hr'g Tr. at 26; Procaps Defs. Reply Br. at 7-8, ¶ 20.) In March 2005, the assets of Airtech Innovations and Procaps Encapsulation, Inc. were purchased to form Procaps L.P. (Procaps Defs. Reply Br. at 3, ¶ 6; 5/14/09 Hr'g Tr. at 26.) The Procaps Defendants deny that Procaps L.P. agreed to assume any of the liabilities of Airtech Innovations. (5/14/09 Hr'g Tr. at 26.) The Procaps Defendants further deny that either Airtech Innovations or Procaps L.P. has ever manufactured VForce brand goggles. (Id. at 26-27.) The Procaps Defendants maintain that the VForce brand goggles distributed by Procaps L.P. and Procaps Direct, Inc. are manufactured by Vision 2 International, which company manufactures the following types of goggles: Armor by VForce, Shield by VForce, Vantage by VForce, Profiler by VForce, and Grill by VForce. (Procaps Defs. Ex. D, Procaps Direct, Inc.'s Ans. to Pl. Interrog. ¶ 2; 5/14/09 Hr'g Tr. at 30.)

Procaps L.P. manufactures DraXxus and XBall paintballs, and has supplied and/or sold paintballs to Skirmish. (Procaps L.P. Ans. to Skirmish's Third-Party Compl. ¶ 28.) Procaps L.P. also supplies VForce brand goggles, although it denies supplying VForce brand goggles directly to

Skirmish. (Id. ¶ 10.) Prior to July 2005, Procaps L.P. distributed paintballs and VForce goggles through National Paintball Supply, pursuant to a distribution agreement. (Skirmish Ex. H, 8/30/05 Procaps L.P. press release; Procaps Defs. Reply Br. at 6, ¶ 12.) After that time, Procaps L.P. distributed these items through Procaps Direct, Inc., although it permitted National Paintball Supply to sell its remaining inventory of Procaps L.P.'s paintballs and VForce goggles after the distribution agreement was terminated. (Skirmish Ex. H, 8/30/05 Procaps L.P. press release.) Skirmish purchased VForce Armor Rental Field Black Goggles and paintballs from National Paintball Supply during 2004 and 2005, and in January 2006. (Skirmish Ex. I.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must -- by affidavits or

otherwise as provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (citations omitted). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993).

### III.  DISCUSSION

Martinez has asserted claims against the Procaps Defendants for strict liability and breach of the implied warranties of merchantability and fitness for a particular purpose. He alleges that the Procaps Defendants manufactured, designed, supplied, distributed and/or sold paintballs to Skirmish, including the paintball used to shoot him on March 19, 2006. (Pl. Compl. ¶¶ 13, 14, 27.) Martinez also asserts that the Procaps Defendants manufactured, designed, supplied, distributed and/or sold to Skirmish the goggles that he rented from Skirmish and was wearing at the time he was shot in the eye with a paintball on March 19, 2006. (Id. ¶¶ 18, 19.) Skirmish alleges, in its Third-Party Complaint for contribution and indemnity against Procaps Direct, Inc., that Procaps Direct, Inc. supplied, manufactured, distributed, and/or sold the paintballs and goggles involved in Martinez's injury to Skirmish. (Skirmish Third-Party Compl. against Procaps Direct, Inc. ¶¶ 7, 12.) Skirmish also alleges, in its Third-Party Complaint for contribution and indemnity against Procaps L.P., that

Procaps L.P. supplied, manufactured, distributed, and/or sold the paintballs and goggles involved in Martinez's injury to Skirmish. (Skirmish Third-Party Compl. against Procaps L.P. ¶ 7.)

In order to be successful in a products liability action, the plaintiff must identify the manufacturer and/or supplier of the defective product that caused his injury. See Burger v. Owens Illinois, Inc., 966 A.2d 611, 624 (Pa. Super. Ct. 2009) (affirming entry of summary judgment in favor of manufacturer of brake shoes where plaintiff was unable to identify the manufacturer of the brake shoes that injured him (citing Bugosh v. Allen Refractories Co., 932 A.2d 901 (Pa. Super. Ct. 2007), appeal granted, Bugosh v. I.U. N. Am., Inc., 942 A.2d 897 (Pa. 2008))); see also Warnick v. NMC-Wollard, Inc., 512 F. Supp. 2d 318, 330 (W.D. Pa. 2007) ("Pennsylvania law requires that a 'plaintiff must establish that the injuries sustained were *caused by* the product of a *particular manufacturer or supplier*.'" (quoting Payton v. Pa. Sling Co., 710 A.2d 1221, 1225-26 (Pa. Super. Ct. 1998))). The Pennsylvania Superior Court has explained that:

> In the context of a products liability action, before liability will attach, "plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier." Payton v. Pennsylvania Sling Co., 710 A.2d 1221, 1225-1226 (Pa. Super. 1998), citing Burman v. Golay and Co., Inc., 420 Pa. Super. 209, 616 A.2d 657, 659 (1992). "[I]n cases in which the allegedly defective product is not available, a plaintiff may prove identification through circumstantial evidence." Id. at 1224, citing O'Donnell v. Big Yank, Inc., 696 A.2d 846, 849 (Pa. Super. 1997). The quantum of identification evidence a plaintiff must offer prior to trial in order to justify allowing the issue to be submitted to a jury is factual and, thus, case-specific. Id., citing O'Donnell, 696 A.2d at 849.

Stephens v. Paris Cleaners, Inc., 885 A.2d 59, 63 (Pa. Super. Ct. 2005) (granting summary judgment in favor of supplier and manufacturer of allegedly defective work clothes where plaintiff could not identify which of three possible manufacturers made the work clothes that he was wearing when he

7

was injured, all of which were supplied by Paris Cleaners). The requirements are similar for claims for breach of the implied warranties of merchantability and fitness for a particular purpose. See D & D Transp. v. Freightliner, L.L.C., Civ. A. No. 07-0960, 2008 WL 919599, at *1 n.2 (M.D. Pa. Apr. 2, 2008) ("Evidence linking the defendant to the product which allegedly has failed is a necessary element of a plaintiff's case for breach of warranty." (citing Santarelli v. BP America, 913 F. Supp. 324, 329 (M.D. Pa. 1996) and Stephen M. Feldman, Pennsylvania Trial Guide: Product Liability § 5.1 (2000))). The Procaps Defendants argue that they are entitled to summary judgment on Martinez's strict liability and breach of implied warranty claims against them, and on Skirmish's claims for contribution and indemnity, because there is no evidence that either of them manufactured, designed, distributed, supplied or sold the goggles or paintballs involved in Martinez's injury. We agree.

    A.    Procaps Direct, Inc.

There are invoices on the record before us that establish that Procaps Direct, Inc. sold paintballs, VForce brand goggles, and replacement parts for VForce Armor Rental Field Goggles to Skirmish subsequent Martinez's March 19, 2006 injury. (Procaps Defs. Ex. D.) There are no invoices, or other evidence, that show that Procaps Direct, Inc. sold paintballs or any VForce brand goggles to Skirmish prior to March 19, 2006. Viewing the evidence of record in the light most favorable to Martinez and Skirmish, as the non-moving parties, we find that there is no evidence that Procaps Direct, Inc. manufactured, designed, distributed, supplied, and/or sold any paintballs or goggles to Skirmish prior to the date of Martinez's injury. We conclude, accordingly, that there are no genuine issues of material fact regarding whether Procaps Direct, Inc. was a manufacturer, designer, distributer, supplier, and/or seller of the paintball or VForce Armor Rental Field Black

Goggles that were involved in Martinez's injury. We further conclude that Procaps Direct, Inc. is entitled to the entry of summary judgment in its favor as to both Martinez's claims for strict liability and breach of implied warranty in connection with the paintball and goggles involved in his injury and Skirmish's claims for contribution and indemnity.

### B. Procaps L.P.

There is evidence on the record of this Motion that Procaps L.P. distributed paintballs and VForce brand goggles to a wholesaler, National Paintball Supply, prior to Martinez's injury. (Skirmish Ex. H; Procaps Defs. Reply Br. at 6, ¶ 12). There is also evidence that Skirmish purchased paintballs and VForce Armor Rental Field Black Goggles from that wholesaler prior to Martinez's injury. (Skirmish Ex. I.) We address the paintballs and goggles separately below.

#### 1. Paintballs

Procaps L.P. has submitted evidence that it has never manufactured, produced, distributed, supplied and/or sold paintballs with the markings described by Martinez in his Product Liability Product Identification as being the paintball that hit him in the right eye. (Thomas Verification ¶¶ 3-7.) Although Skirmish has supplied evidence that it purchased paintballs manufactured or supplied by Procaps L.P., Skirmish has pointed to no evidence that Procaps L.P. manufactured, designed, distributed, supplied and/or sold paintballs matching the description given by Martinez in his Product Identification. More importantly, Martinez does not dispute Procaps L.P.'s contention that it did not manufacture, design, distribute, supply or sell the paintball used to shoot him. (Pls. Br. in Opp'n to Procaps Defs. Mot. For Summ. J. at 5 ¶ 13.) Viewing the evidence of record in the light most favorable to Skirmish and Martinez as the non-moving parties, we conclude that there is no genuine issue of material fact regarding whether Procaps L.P. manufactured, designed, distributed, supplied

or sold the particular paintball used to injure Martinez on March 19, 2006.  We further conclude that Procaps L.P. is entitled to the entry of summary judgment in its favor as to both Martinez's claims for strict liability and breach of implied warranty with respect to the paintball used to injure him and Skirmish's claims for contribution and indemnity with respect to the paintball used to injure Martinez.

        2.     <u>Goggles</u>

Skirmish has a minimum of 1,000 pairs of goggles at its facility.  (Procaps Defs. Ex. E, Skirmish's Ans. to Martinez's Interrog. ¶ 3.)  A review of the invoices on the record of this Motion establishes that Skirmish purchased 700 pairs of VForce Armor Rental Field Black Goggles from National Paintball Supply between April 2004 and January 2005.  (Skirmish Ex. I, Invoices dated 4/6/04, 4/19/04; 5/1/04; 5/11/04/ 8/02/04; 1/03/05.)  The invoices do not show the purchase of any other VForce Armor Rental Field Goggles prior to Martinez's injury.  There is an invoice that reflects Skirmish's purchase of 24 pairs of VForce Field Vantage goggles on April 15, 2005.  (<u>Id.</u>, Invoice dated 4/15/05.)  VForce Field Vantage are, however, a different type of goggles than the VForce Armor Rental Field Black Goggles worn by Martinez on March 19, 2006.  (Procaps Defs. Ex. D, Procaps Defs. Ans. to Pl. Interrog. ¶ 2.)  Viewed in the light most favorable to Martinez and Skirmish as the non-moving parties, the evidence of record does not show that Skirmish made any purchases of VForce Armor Rental Field Goggles from National Paintball Supply after Procaps L.P. came into existence in March 2005.  Consequently, we conclude that there is no evidence that Procaps L.P. manufactured, designed, distributed, supplied, or sold the goggles that Martinez rented

from Skirmish on March 19, 2006.[2]

Skirmish's invoices from National Paintball Supply do, however, show that Skirmish purchased 25 replacement straps for VForce goggles from National Paintball Supply on November 14, 2005. (Skirmish Ex. I, Invoice dated 11/14/05.) Viewing this evidence in the light most favorable to Martinez and Skirmish, we find that there is evidence that 25 pairs of goggles made available for rent by Skirmish at the time of Martinez's injury may have had straps manufactured, designed, distributed, supplied or sold by Procaps L.P.

Martinez contends that the VForce Armor Rental Field Black Goggles he wore on March 19, 2006 had two design defects: the lack of a vertical restraint and a defectively designed rear strap. (Trident Rpt. at 7-8 ¶¶ (f), (g).) Since there is evidence that Procaps L.P. distributed 25 of the straps

---

[2]Martinez has also supplied evidence that the sample VForce Armor Rental Field Black Goggles provided to him by Skirmish have the phrase "CE PROCAPS LP" printed on the lens. (Pl. Surrebuttal Br. Ex. A.) The fact that Skirmish presently has a pair of VForce Armor Rental Field Goggles with <u>lenses</u> bearing the phrase "CE PROCAPS LP" does not change our conclusion that there is no evidence that Skirmish had purchased VForce Armor Rental Field Goggles manufactured, designed, distributed, supplied or sold by Procaps L.P. prior to the time of Martinez's injury, or that it had any available for rental to Martinez on March 19, 2006. The evidence of record shows that Skirmish has purchased 3,740 replacement lenses for its VForce Armor Field Rental Goggles since Procaps L.P. came into existence in March 2005. Skirmish obtained replacement lenses for VForce Armor Field Rental Goggles from National Paintball Supply three times between March 1, 2005 and March 19, 2006. Skirmish purchased 300 VForce Armor Field replacement lenses on March 21, 2005; 500 VForce Armor Field replacement lenses on June 9, 2005; and 392 replacement lenses on September 1, 2005. (Skirmish Ex. I, Invoices dated 3/21/05, 6/9/05, and 9/1/05.) Skirmish also made seven purchases of VForce Armor Rental replacement lenses from Procaps Direct, Inc. after Martinez's injury: 216 replacement lenses on December 11, 2006; 408 replacement lenses on January 5, 2007; 480 replacement lenses on March 27, 2007, 300 replacement lenses on May 29, 2007; 144 replacement lenses on July 5, 2007; 500 replacement lenses on September 4, 2007; and 500 replacement lenses on November 30, 2007. (Procaps Defs. Ex. D, Invoices dated 12/11/06, 1/5/07, 3/26/07, 5/29/07, 7/5/07, 9/4/07, and 11/30/07.) Since Skirmish has purchased enough replacement lenses to replace the lenses on each of its 700 pairs of VForce Armor Rental Field Black Goggles 5.3 times since Procaps L.P. came into existence, the fact that the goggles recently examined by Plaintiff contain lenses bearing the phrase "CE PROCAPS LP" does not create a genuine issue regarding the identity of the manufacturer of the goggles at issue in this case.

that may have been on goggles available for rental to Martinez on March 19, 2006, we must determine if that evidence is sufficient to create a genuine issue of material fact with respect to whether Procaps L.P. was a manufacturer, designer, distributor, supplier or seller of a defectively designed strap on the goggles Martinez wore when he was injured.

Evidence that a substantial percentage of the goggles available for rental to Martinez may have had straps manufactured, designed, distributed, supplied or sold by Procaps L.P. would not be sufficient to create a jury issue with respect to the identity of the manufacturer or supplier of the straps or goggles. Cf. Stephen M. Feldman, Pennsylvania Trial Guide: Product Liability § 5.2 (2008) ("[E]vidence that a substantial percentage of the inventory of a retailer is made up of the products of a particular manufacturer is not sufficient evidence that a specific product acquired from the retailer was the product of that manufacturer even though there was a high probability of the fact."). Consequently, evidence that Procaps L.P. supplies straps for 25 of the 700 pairs of goggles available for rental by Skirmish on March 19, 2006 is insufficient to create a jury issue with respect to Procaps L.P.'s strict liability, or liability for breach of implied warranty, in connection with the VForce Armor Rental Field Black Goggles Martinez wore on that date. See Meadows v. Anchor Longwall & Rebuild, Inc., 455 F. Supp. 2d 391, 398 (W.D. Pa. 2006) (granting summary judgment in favor of alleged supplier of malfunctioning mine shield valve in products liability action, where another supplier also supplied valves to the mine and where there was no way to distinguish between the valves purchased from the two suppliers); see also Payton, 710 A.2d at 1225-26 (granting summary judgment in favor of supplier of defective chain sling where there was no evidence distinguishing which of two possible suppliers supplied the chain sling that caused plaintiff's injury); Warnick, 512 F. Supp. 2d at 330-332 (granting summary judgment in favor of defendant manufacturer of belt

loader where the evidence demonstrated that the defendant was one of many manufacturers who manufactured that particular model of belt loader over two decades); but cf. Waters v. NMC-Wollard, Inc., Civ. A. No. 06-0032, 2009 WL 51313, at *13 n.17 (E.D. Pa. Jan. 6, 2009) (denying defendant NMC-Wollard, Inc.'s motion for summary judgment on the issue of product identity where all "four manufacturers of Wollard belt loaders are linked by successor liability, rendering NMC liable for all previous manufacturers" of the belt loader identified by plaintiff as having caused his injury).

Martinez attempts to avoid the problems caused by his inability to conclusively link Procaps L.P. to the VForce Armor Rental Field Black Goggles he wore on March 19, 2006, and to the strap for those goggles, by arguing that Procaps L.P. is liable as the successor to Airtech Innovations, which distributed, supplied or sold VForce Armor Rental Field Black Goggles prior to the time that Procaps L.P. came into existence. The general rule with respect to successor liability in Pennsylvania is that "'when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property.'" Schmidt v. Boardman Co., 958 A.2d 498, 504 (Pa. Super. Ct. 2008) (quoting Cont'l Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 (Pa. 2005)). Plaintiff argues that the product line exception to the general rule applies in this case. The product line exception applies where "'[t]he successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner. The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor.'" Id. (quoting Childers v. Power Line Equip. Rentals, 681 A.2d 201, 212 (Pa. Super. Ct. 1996)).

"The purpose for the 'product line' exception is to spread the costs of injuries resulting from the manufacture of defective products to corporations acquiring the assets of the previous manufacturer where it would be fair and just because the acquiring corporation continues substantially the same business and same manufacturing operation." Savini v. Kent Mach. Works, Inc., 525 F. Supp. 711, 718 (E.D. Pa. 1981) (citing Ray v. Alad Corp., 560 P.2d 3, 8-9 (Cal. 1977)). The product line exception is available only if a plaintiff is able to show the following two initial factors: "(1) that the successor corporation acquired all or substantially all of the manufacturing assets of its predecessor; and (2) that the successor corporation undertook essentially the same manufacturing operation as its predecessor." Van Doren v. Coe Press Equip. Corp., 592 F. Supp. 2d 776, 787 (E.D. Pa. 2008). It is evident that this exception focuses strictly on entities that manufacture goods and the acquisition of manufacturing assets. If a plaintiff is able to establish those two factors, he or she must also establish the following three additional factors before the product line exception may be applied:

> "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business."

Schmidt, 958 A.2d at 506 (quoting Dawejko v. Jorgensen Steel Co., 434 A.2d 106, 109 (Pa. Super. Ct. 1981)). "[T]he question of whether each particular required factor has been satisfied is a question for the jury." Van Doren, 592 F. Supp. 2d at 788 (citing Schmidt, 958 A.2d 498). Consequently, at the summary judgment stage, the court determines "whether Plaintiffs have

presented sufficient evidence to raise a question of material fact as to each of the five required factors." Id.

Procaps L.P. has admitted, through its counsel, that it acquired all of the assets of Airtech Innovations, but denies that Airtech Innovations ever manufactured VForce brand goggles and maintains that VForce brand goggles are manufactured by Vision 2 International. (5/14/09 Hr'g Tr. at 26-27, 29-30; Procaps Defs. Ex. D, Procaps Direct, Inc.'s Ans. to Pl. Interrog. ¶ 2.) The evidentiary record also includes the following: (1) an undated press release stating that "VForce Vision Systems, the paintball eyewear division of Leader Industries, has been acquired by Procaps, Inc.'s sporting goods manufacturing division, AirTech Industries[;]" (2) two documents showing that Procaps L.P. owns the "VForce" trademark; and (3) an August 30, 2005 press release that refers to Procaps L.P. as "the makers of . . . VForce Vision Systems paintball masks . . ." and as a "manufacturer and marketer of high quality branded and private label . . . paintballs and mask/goggle systems. (Pl. Exs. C, F, G; Skirmish Ex. H.) Viewing this evidence in the light most favorable to Martinez and Skirmish, it does not establish that Procaps L.P. acquired manufacturing assets from Airtech Innovations relating to the manufacturing of any line of VForce brand goggles.

Martinez maintains that Procaps L.P.'s ownership of the "VForce" trademark formerly owned by Airtech Innovations is enough, by itself, to subject that company to liability under product line exception. According to the Restatement (Second) of Torts, § 400, "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts, § 400; see also Walton v. Avco Corp., 610 A.2d 454, 459 (Pa. 1992) (noting that the Pennsylvania Supreme Court adopted § 400 of the Restatement (Second) of Torts in 1968 (citing Forry v. Gulf Oil Corp., 237 A.2d 593, 599 (Pa. 1968))). Section

400 of the Restatement (Second) of Torts applies when a corporation puts its own name or trademark on an object manufactured by another company. Carter v. Joseph Bancroft & Sons Co., 360 F. Supp. 1103, 1107 (E.D. Pa. 1973). Acquisition of a trademark from its previous owner is not, however, sufficient to establish liability under the product line exception where the acquiring company did not also purchase all of the manufacturing assets of the trademark's previous owner. See Savini, 525 F. Supp. at 720 (finding that products line exception did not apply to corporation that purchased selling corporation's trademark and some of its equipment but did not purchase the selling corporation's manufacturing plant or manufacturing equipment because "[t]he mere use of [the] trademark and good will cannot be said to raise a factual issue that [purchaser] engaged in 'essentially the same manufacturing operation' as [selling corporation]"). We conclude, accordingly, that Martinez and Skirmish have not presented sufficient evidence to raise a genuine issue of material fact as to the first two of the required factors for the application of the product line exception. Consequently, we further conclude that Procaps L.P. is entitled to the entry of summary judgment in its favor as to both Martinez's claims for strict liability and breach of implied warranty in connection with the VForce Armor Rental Field Black Goggles involved in his injury and Skirmish's claims for contribution and indemnity related to the goggles.

**IV.   CONCLUSION**

For the foregoing reasons, summary judgment is granted in favor of the Procaps Defendants and against Martinez and Skirmish on the claims asserted by Martinez in his Complaint against the Procaps Defendants and on the claims asserted by Skirmish in its Third-Party Complaints against the Procaps Defendants. Martinez's Complaint against the Procaps Defendants and Skirmish's Third-Party Complaints against Procaps Direct, Inc. and Procaps L.P. are, accordingly, dismissed,

and Procaps Direct, Inc. and Procaps L.P. are dismissed as parties to this action.[3]

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.

---

[3] Skirmish asks, in the event that Procaps L.P. is dismissed as a defendant in this action because it cannot be identified as one of the distributors or suppliers of the goggles Martinez was wearing when he was injured, that Plaintiff's strict liability claims and breach of implied warranty claims regarding those goggles be dismissed against Skirmish as well. Skirmish's request is denied.

There is evidence on the record before us that Martinez rented goggles from Skirmish on March 19, 2006 that had the word "VForce" printed on them. (Martinez Dep. at 45) Skirmish has admitted that it rented only VForce Armor Rental Field Black Goggles at the time Martinez rented goggles from Skirmish. (Paul Fogel Dep. at 49-50.) In addition, Martinez has identified the goggles he was wearing at the time he was injured as VForce Armor Rental Field Black Goggles. (Pl. Product Liability Identification ¶ 1.) There is also evidence that VForce Armor Rental Field Black goggles are manufactured by Vision 2 International. We conclude that this evidence is sufficient to create a genuine issue of material fact for the jury regarding the identity and manufacturer of the goggles Martinez wore at the time of his injury and regarding Skirmish's role as a supplier of those goggles. See O'Donnell v. Big Yank, Inc., 696 A.2d 846, 849-50 (Pa. Super. Ct. 1997) (denying Big Yank's motion for summary judgment on strict liability claim arising from injuries suffered by O'Donnell when his pants melted after exposure to flame, even though the pants had been discarded, where O'Donnell's wife testified that she purchased three or four pairs of pants for her husband at the same time, all of which were all of the exact same make as the pair her husband wore when he was injured, except for their color, and where she turned the remaining pairs of pants over to counsel).