IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE MARTINEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SKIRMISH, U.S.A., INC. | : | NO. 07-5003 |

**MEMORANDUM**

**Padova, J.**                                                                                                **July 1, 2009**

      Jorge Martinez asks that we reconsider our Memorandum and Order dated June 1, 2009, granting the Motion for Summary Judgment filed by Procaps Direct, Inc. and Procaps L.P. (collectively "the Procaps Defendants").  Martinez sued the Procaps defendants, companies that manufacture and/or distribute paintballs and goggles, asserting claims for strict liability and breach of the implied warranties of merchantability and fitness for a particular purpose arising out of an injury he suffered on March 19, 2006, when he was hit in the eye with a paintball at the Jim Thorpe, Pennsylvania paintball facility owned by Skirmish, U.S.A., Inc.  We granted the Procaps Defendants' Motion for Summary Judgment as to Plaintiff's claims of strict liability and breach of the implied warranties of merchantability and fitness for a particular purpose, in connection with the VForce Armor Rental Field Black Goggles Plaintiff was wearing when he was injured, because there was no evidence in the record that the Procaps Defendants were the manufacturers or suppliers of those goggles.  Plaintiff contends that we erred in our determination that Procaps L.P. is not the successor in interest to Airtech Innovations, Inc. ("Airtech") for purposes of these claims.

I.      **LEGAL STANDARD**

      "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

A motion for reconsideration will only be granted if the moving party establishes: (1) the existence of newly available evidence; (2) an intervening change in the controlling law; or (3) a need to correct a clear error of law or prevent manifest injustice. Pub. Interest Research Group of N.J. v. Magnesium Elektron, 123 F.3d 111, 116-17 (3d Cir. 1997). "Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of judicial resources." Moyer v. Italwork, Civ. A. No. 95-2264, 1997 WL 312178, at *3 (E.D. Pa. June 3, 1997) (internal quotation omitted). Plaintiff does not rely on the existence of newly available evidence or an intervening change in the controlling law, nor does he contend that reconsideration of our June 1, 2009 Memorandum and Order is necessary to prevent a manifest injustice. Consequently, we only consider whether our previous determination of this issue was a clear error of law.

**II.   DISCUSSION**

Plaintiff maintains that Procaps L.P. is liable to him as the successor in interest to Airtech, which distributed, supplied or sold VForce Armor Rental Field Black Goggles prior to the time that Procaps L.P. came into existence. The record contains evidence that Procaps L.P. was formed in March 2005 and has been the owner of the "VForce" trademark since that time. (Procaps Defs. Reply Br. at 6, ¶ 15; Pl. Exs. F, G.) Prior to the formation of Procaps L.P., the VForce trademark was owned by Airtech, a division of Procaps Encapsulation, Inc. (Id.; 5/14/09 Hr'g Tr. at 26; Procaps Defs. Reply Br. at 7-8, ¶ 20.) In March 2005, the assets of Airtech and Procaps Encapsulation, Inc. were purchased to form Procaps L.P. (Procaps Defs. Reply Br. at 3, ¶ 6; 5/14/09 Hr'g Tr. at 26.) Both of the Procaps Defendants presently distribute VForce brand goggles, which are manufactured by Vision 2 International. (Procaps Defs. Ex. D, Procaps Direct, Inc.'s Ans. to Pl.

Interrog. ¶ 2; 5/14/09 Hr'g Tr. at 30.)  There is no evidence on the record that either Procaps L.P. or Airtech Innovations ever manufactured any VForce brand goggles.

The general rule with respect to successor liability in Pennsylvania is that "'when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property.'"  See Schmidt v. Boardman Co., 958 A.2d 498, 504 (Pa. Super. Ct. 2008) (quoting Cont'l Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 (Pa. 2005)).  Plaintiff argues that the product line exception to the general rule applies in this case.  The product line exception applies where "'[t]he successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner.  The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor.'"  Id. (quoting Childers v. Power Line Equip. Rentals, 681 A.2d 201, 212 (Pa. Super. Ct. 1996)).

Plaintiff contends that Procaps L.P. should be treated as the manufacturer of the goggles, even though it did not physically manufacture them, because it owns the VForce trademark and has the VForce trademark placed on VForce Armor Rental Field Black Goggles.  Plaintiff relies on the Restatement (Second) of Torts, § 400, which states that "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."  Restatement (Second) of Torts, § 400; see also Walton v. Avco Corp., 610 A.2d 454, 459 (Pa. 1992) (noting that the Pennsylvania Supreme Court adopted § 400 of the Restatement (Second) of Torts in 1968 (citing Forry v. Gulf Oil Corp., 237 A.2d 593, 599 (Pa. 1968))).  Section 400 of the Restatement (Second) of Torts applies when a corporation puts its own name or trademark on an object manufactured by another company.  Carter v. Joseph Bancroft & Sons Co., 360 F. Supp. 1103,

1107 (E.D. Pa. 1973). Plaintiff maintains that we committed clear legal error by rejecting this argument.

According to Plaintiff, after purchasing the VForce trademark from Airtech Innovations, "Procaps, LP then took up the same liability as the manufacturer of the VForce Armor Goggles by virtue of its purchase of the trademark and subsequent exercise and use of the trademark through continued sales of the VForce Armor Goggles. It does not matter that Procaps, LP does not itself manufacture the goggles." (Mot. for Reconsideration ¶ 10.) Plaintiff cites to no authority that directly supports his argument. He relies, instead, on the following statement made by the Pennsylvania Superior Court when it first adopted the product line exception:

> We also believe it better not to phrase the new exception too tightly. Given its philosophical origin, it should be phrased in general terms, so that in any particular case the court may consider whether it is just to impose liability on the successor corporation. The various factors identified in the several cases discussed above will always be pertinent -- for example, whether the successor corporation advertised itself as an ongoing enterprise, Cyr v. B. Offen & Co., [501 F.2d 1145 (1st Cir. 1974)]; or whether it maintained the same product, name, personnel, property, and clients, Turner v. Bituminous Casualty Co., [244 N.W.2d 873 (Mich. 1976)]; or whether it acquired the predecessor corporation's name and good will, and required the predecessor to dissolve, Knapp v. North American Rockwell Corp., [506 F.2d 361 (3d Cir. 1974)]. Also, it will always be useful to consider whether the three-part test stated in Ray v. Alad Corp., [560 P.2d 3 (Cal. 1977)], has been met. The exception will more likely realize its reason for being, however, if such details are not made part of its formulation.

Dawejko v. Jorgensen Steel Co., 434 A.2d 106, 111 (Pa. Super. Ct. 1981). The Superior Court has, however, made it clear since Dawejko that a party must satisfy the three-part test stated in Ray in order to utilize the product line exception:

> the product-line exception to the general rule of no liability for

>successor corporations may *only* be applied when the following three circumstances have *each* been established:
>
>"(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading [role], and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business."

Hill v. Trailmobile, Inc., 603 A.2d 602, 606 (Pa. Super. Ct. 1992) (quoting Dawejko, 434 A.2d at 109). See also Keselyak v. Reach All, Inc., 660 A.2d 1350, 1354 (Pa. Super. Ct. 1995) (determining that the product line exception was not available to plaintiff where defendant's purchase of the manufacturing line did not destroy plaintiff's remedies against the original manufacturer); Schmidt, 958 A.2d at 504 (concluding that proof of the three Ray factors is mandatory).

Plaintiff's reliance on the Restatement (Second) of Torts, § 400 ignores the purpose of the product line exception. "The purpose for the 'product line' exception is to spread the costs of injuries resulting from the manufacture of defective products to corporations acquiring the assets of the previous manufacturer where it would be fair and just because the acquiring corporation continues substantially the same business and same manufacturing operation." Savini v. Kent Mach. Works, Inc., 525 F. Supp. 711, 718 (E.D. Pa. 1981) (citing Ray, 560 P.2d at 8-9). The product-line exception was, thus, "created to afford relief to plaintiffs, victims of manufacturing defects who, due to the sale or transfer of the manufacturing corporation, otherwise would have no avenue of redress for injuries caused by defective products." Hill, 603 A.2d at 607 (citing Dawejko, 434 A.2d at 109) (emphasis omitted).

There is no evidence in this case that Plaintiff's remedies against the original manufacturer,

Vision 2 International, were destroyed by the purchase of the assets of Airtech Innovations to create Procaps L.P., or that Plaintiff has no avenue of redress other than against Procaps L.P. Consequently, Plaintiff cannot satisfy the first Ray factor, "the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business[.]" Hill, 603 A.2d at 606.[1]

### III.   CONCLUSION

There is no evidence on the record before us that the purchase of Airtech's assets and the consequent creation of Procaps L.P. involved the purchase of manufacturing assets for VForce brand goggles in addition to the VForce trademark. We conclude, accordingly, that our previous determination of this issue was not in error. See Savini, 525 F. Supp. at 720 (finding that products line exception did not apply to corporation that purchased selling corporation's trademark and some of its equipment but did not purchase the selling corporation's manufacturing plant or manufacturing equipment because "[t]he mere use of [the] trademark and good will cannot be said to raise a factual issue that [purchaser] engaged in 'essentially the same manufacturing operation' as [selling corporation]"). Plaintiff's Motion for Reconsideration is, therefore, denied. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.

---

[1] Moreover, the application of the product line exception to Procaps L.P. would not further the purpose of the exception, which is to "afford relief to plaintiffs . . . who. . . otherwise would have no avenue of redress for injuries caused by defective products." Hill, 603 A.2d at 607 (emphasis omitted). Plaintiff has stated viable claims for strict liability and breach of implied warranty against Skirmish, U.S.A., Inc., and, accordingly, has another avenue of redress.